CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
DEC 3 0 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NORMAN RATTLIFF, JR., ) | |
|     Plaintiff, ) | Civil Action No. 7:08-cv-00551 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| GERALD MCPEAK, et. al., ) | By: Hon. Glen E. Conrad |
|     Defendants. ) | United States District Judge |

Plaintiff Norman Rattliff, Jr., a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint as amended,[1] Rattliff alleges that the defendant officials at the New River Valley Regional Jail ("the jail") violated his constitutional rights by failing to provide prompt and appropriate medical treatment for his diabetes and by wrongfully detaining him pursuant to an outstanding warrant from another jurisdiction, in violation of the Interstate Agreement on Detainers ("IAD"). As defendants, Rattliff names Gerald McPeak, jail superintendent; N. H. Pelkins, a captain at the jail; and John Doe, the jail's primary care physician. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.[2]

Background

Rattliff alleges the following sequence of events from which his claims arise. In the fall of 2007, he was serving a sentence at the Huttonsville Correctional Center ("HCC") in Huttonsville, West Virginia. On October 1, 2007, HCC Warden Teresa Waid sent letters offering temporary custody of Rattliff to officials in Carroll County Virginia to allow him to answer indictments pending against him in the Carroll County Circuit Court. The warden sent a similar letter to officials in

---

[1] The court initially filed the complaint conditionally and granted Rattliff an opportunity to amend to particularize his claims. He submitted his amended complaint, which the court construed as a motion to amend and which will be granted.

[2] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

Wythe County, Virginia, regarding indictments pending against Rattliff in the Wythe County Circuit Court. Carroll County Commonwealth's Attorney Gregory G. Gould accepted the warden's offer of temporary custody of Rattliff, proposing "to bring [Rattliff] to trial within the time specified in Article III(a) of the Agreement on Detainers" and to return Rattliff to West Virginia custody "immediately after" completion of the trial. Gould then sent officers to transport Rattliff to Virginia, and the inmate was processed into the jail on November 16, 2007.

Upon arrival at the jail, Rattliff remained in a holding cell for 24 hours. After that period, a female officer conducted intake questioning, and in the course of this process, Rattliff informed her that he had high blood pressure, was diabetic, and needed to have a finger-stick test of his blood sugar level.[3] The officer reported this condition and request to the nursing staff. A nurse came and conducted a finger-stick test, which indicated that Rattliff's blood sugar level was "an exorbitant 460." The nurse informed Rattliff that she could not do anything for him until first consulting with the jail's physician.

While at HCC, Rattliff had been receiving, among other things, prescription medications Glucophage and Glyburide as treatment for his diabetes. When he arrived at the jail, all of his medications were discontinued without examination by a physician. Fifteen (15) days after Rattliff was admitted to the jail, medical staff evaluated him and a physician examined him.[4] This doctor refused to allow Rattliff to continue taking the medications he had been taking at HCC, saying that the cost was too high. Rattliff also provided staff with the necessary paperwork to obtain his medical records from HCC. Even after reviewing the HCC medical records regarding the treatment that physicians there had tested and found effective in treating Rattliff's diabetes, the doctor at the jail refused to continue prescribing the same medications for Rattliff. The doctor prescribed alternative medications, but Rattliff refused to take them because the doctor "did not explain or describe the

---

[3]Rattliff claims that he was diagnosed with diabetes in January 2000.

[4]In his initial complaint, Rattliff alleged that he went for two months after arriving at the jail before being examined by the jail's primary care physician, who is not a specialist in the treatment of diabetic patients.

2

medication he was attempting to prescribe, because [Rattliff] is allergic to insulin, and because what he had been given in West Virginia was proven to control his diabetes after numerous trial adjustments." The jail doctor did offer to allow Rattliff to continue the medications prescribed by the doctors in West Virginia, if the inmate's family would agree to pay for them.

Rattliff remained at the jail for several months. The Carroll County Circuit Court entered final judgment against him on January 31, 2008. Approximately two weeks later, Carroll County sheriff's deputies arrived at the jail with a court order authorizing them to return Rattliff to West Virginia custody. Jail officials refused to release Rattliff for return to West Virginia, however, based on outstanding warrants against him in Wythe County, Virginia. Wythe County authorities had not responded to Rattliff's request (through the HCC warden) for final disposition of these charges. Rattliff filed a petition for a writ of habeas corpus in the Wythe County Circuit Court. His attorney later informed him that the Commonwealth's Attorney had agreed to dismiss all the warrants pending in Wythe County if Rattliff agreed to dismiss his habeas petition. He did so, and all warrants were dismissed by order entered March 26, 2008. Rattliff was returned to West Virginia custody on April 3, 2008.

In Claim 1 of his complaint, Rattliff complains that the only reason the doctor gave for refusing to continue his previous prescriptions was the cost. He claims that as a result of jail officials' actions regarding his diabetes treatment, he "suffered elevated blood sugar levels, lightheadedness, dizziness, headaches, and weakening kidney function." When he was readmitted to HCC, diagnostic testing indicated that his diabetic condition "had worsened dramatically in the time he was in the custody and care of the defendants." The doctors at HCC prescribed increased dosages of Glyburide and Glucophage. Plaintiff claims that "if these increased dosages do not effectively treat plaintiff's worsened condition," [he] has been advised that he will need to begin taking insulin injections."

In Claim 2, Rattliff asserts that because Wythe County authorities did not respond to his demand for resolution of the Wythe County charges under the IAD, these authorities had no

3

jurisdiction to detain him after completion of the Carroll County proceedings. On this basis, he sues the jail officers who refused to release him to the Carroll County officers in February 2008 for return to West Virginia. He asserts that failure to release him caused him harm, because the living conditions at the jail were much more harsh than the conditions under which he would have been confined at HCC.

## Discussion

A. Diabetes Treatment

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). To prove that medical treatment he received while a prisoner amounted to a violation of the Eighth Amendment prohibition against cruel and unusual punishment, an inmate must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-105 (1976) (convicted felon). Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations. Id. at 105-106. First, the prisoner must demonstrate a medical need serious enough to give rise to a constitutional claim. Such a need involves a condition that places the inmate at substantial risk of serious harm, usually loss of life or permanent disability; a condition for which lack of treatment perpetuates severe pain also presents a serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978). Second, plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he drew or must have drawn that inference, and that he disregarded the risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Rattliff alleges that he has a serious medical condition, diabetes, and that while incarcerated at the jail, he suffered symptoms, such as high blood sugar, that indicated a serious need for medical treatment. He does not, however, allege facts indicating that any of the defendant jail officials acted

4

with deliberate indifference to his need for treatment. No one ignored his condition. He admits that once he informed jail officers of his diabetes and high blood pressure, a nurse came to see him and tested his blood sugar. She advised him that she would have to speak with the doctor before providing any treatment. He claims he did not see the doctor for two weeks after that. However, even after being advised to amend to particularize his claims, he does not allege making any additional requests for more immediate treatment or indicate that during this time, he suffered specific physical discomfort or other symptoms necessitating such care.

The doctor, once he had examined Rattliff, offered to prescribe medication to treat his diabetes, but Rattliff refused, because he wanted the particular medications he had been taking at HCC. Apparently then, by his own choosing, he went entirely without medication for the rest of the four and a half months he spent at the jail. His refusal of offered treatment, based on his disagreement with the jail doctor's prescriptions, does not give rise to a claim that the doctor was deliberately indifferent to his needs. The fact that other doctors had prescribed different treatment is insufficient to prove that the jail doctor's course of treatment was an unreasonable response to the risk posed by Rattliff's diabetic symptoms while he was at the jail. Moreover, as Rattliff refused the offered treatment, he cannot prove that the jail doctor's treatment decisions caused the alleged aggravation of his diabetic condition as diagnosed by HCC doctors upon his return.

At the most, Rattliff is alleging that the doctor was negligent in his treatment decisions– by failing to follow previous doctors' treatment choices and by failing to offer any medical basis for prescribing different medications, giving only cost as the reason for changing Rattliff's medications. While these accusations might conceivably give rise to a claim of medical malpractice under state law, they do not implicate Rattliff's constitutional rights and are not independently actionable under § 1983. Thus, Rattliff fails to state any constitutional claim against the jail doctor. He also fails to state any claim against the other jail officers regarding his medical care, as these officers could rightfully rely on the doctor's expertise as to the appropriate course of treatment for Rattliff's condition. See Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990).

5

Based on the foregoing, the court will dismiss Rattliff's medical claims, pursuant to § 1915A, for failure to state any actionable claim under § 1983. The court will also decline to exercise supplemental jurisdiction over any possible, related claim under state law, pursuant to 28 U.S.C. § 1367(c).

B. Wrongful Detention

Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir.1982). An official cannot be held automatically liable for violations of plaintiff's rights through the actions of subordinate officials, however, as the doctrine of respondeat superior is inapplicable to §1983 actions. Id. Rattliff fails to allege that Defendant McPeak had any personal involvement in detaining him after the Carroll County charges were resolved or that Defendant Pelkins was following any policy imposed by McPeak when Pelkins refused to allow Carroll County officers to return Rattliff to West Virginia. McPeak cannot be automatically liable for Pelkins' actions.

In any event, Rattliff fails to allege that Pelkins wrongfully detained him pursuant to the Wythe County warrants. Rattliff admits that these warrants were filed as detainers against him even before he was transported from West Virginia to the jail. As a correctional official, Pelkins had no authority to make a legal determination as to whether Wythe County officials had lost their jurisdiction to prosecute Rattliff on those warrants, based on their failure to make a timely response to Rattliff's demand under the IAD for resolution of the charges. Once Pelkins received notification that an order had been entered in the Wythe County Circuit Court dismissing the warrants against Rattliff, he did not detain Rattliff under those warrants, and the inmate was returned to West Virginia within less than a week. As Rattliff offers no legal authority under which jail officials violated his rights by detaining him in Virginia pursuant to facially valid criminal warrants, the court will dismiss Claim 2 of his complaint, pursuant to § 1915A(b)(1), for failure to state a claim. An appropriate order shall be issued this day.

6

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 30th day of December, 2008.

/s/ John H. Conrad
United States District Judge